UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 08-20472-CIV COOKE/BROWN

IVONNE E. GALDAMES, *et al.*,

    *Plaintiffs*,

v.

N & D INVESTMENT CORP., *et al.*,

    *Defendants*.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon Defendants' Motion for Summary Judgment [DE 17] and Plaintiffs' Motion for Summary Judgment [DE 21]. The motions are considered as cross-motions since both parties are using their respective motions for summary judgment as a response to the other's motion. The Defendants, N&D Investment Corp. ("N&D") and Ofer Manor, one of the owner's of N&D, were sued by Plaintiffs, Ivonne Galdames, Jacqueline Galdames, and Guillermo Osorio, for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. ("FLSA"). Specifically, the Plaintiffs all seek compensation for unpaid overtime wages along with the associated liquidated damages. Defendants motion to strike [DE 28] Plaintiffs' Motion for Summary Judgment [DE 21], was denied in a previous order.

### I.     FACTUAL BACKGROUND

Defendant N&D is a commercial laundry business, d/b/a Mr. Clean Laundry, located in Miami, FL. Ofer Manor, along with is wife (who is not a party to this suit) is the owner of N&D. Mr. Manor is also the corporation's vice-president. Plaintiff Ivonne Galdames was employed by Defendants from August 2005 until March 2007. Plaintiff Jacqueline Galdames was employed

by Defendants from August 2005 until April 2007. And, Plaintiff Guilermo Osorio was employed by Defendants from April 2006 to April 2007. All three Plaintiffs' duties included washing, drying, pressing and folding linens and clothing. Mr. Osorio also performed some machine maintenance duties. Plaintiffs Osorio and Jacqueline Galdames were eventually promoted to day shift manager and night shift supervisor, respectively. After these promotions, these two Plaintiffs had additional responsibilities regarding inventory, work assignments, schedules, and disputes among other employees, but also maintained their previous laborer duties. N&D's business only serves customers in South Florida.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic*

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

### III.   ANALYSIS[1]

This Court receives a great number of FLSA cases, the vast majority of which settle before motions to dismiss or for summary judgment are filed. This Case differs in that Defendants are arguing that they do not come under the purview of the FLSA because they do not meet the "engaged in commerce" requirements and that even if they did, two of the Plaintiffs, Jacqueline Galdames and Guillermo Osorio, are illegal immigrants and therefore not entitled to FLSA protections.[2]

---

[1] Defendants argue that Plaintiffs cannot establish jurisdiction under the FLSA. However, jurisdiction is not at issue. As stated succinctly by the Middle District of Florida: "The complaint, which pleads colorable claims under the FLSA, properly invokes federal subject matter jurisdiction under 28 U.S.C. §1331." *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 WL 793660, at *1 (M.D.Fla. Mar. 24, 2008) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516. *See also Brown v. Masonry Products, Inc.* 874 F.2d 1476, 1478 (11th Cir. 1989) ("The great weight of authority supports the view that federal district courts, because of their original jurisdiction under 28 U.S.C.A. § 1337 over claims arising under a law regulating commerce, can entertain a FLSA claim under the Act's civil remedy provision, 29 U.S.C.A. § 216(b), regardless of the amount in controversy or diversity of citizenship.").

[2] Defendants' Motion for Summary Judgment [DE 17] only seeks summary judgment on immigration status grounds as to those two Plaintiffs. The third Plaintiff, Ivonne Galdames, testified during deposition that she was here and working legally. However, Defendants now seek, in a supplement to their motion, to add Ivonne Galdames, alleging that her testimony was false. The bases for this allegation are Plaintiffs' objections to Defendants' Second Request for Admissions. There, Defendants requested admissions regarding the filing of tax returns and validity of social security numbers. Plaintiffs objected to each request with the same basic language, arguing that the requests were irrelevant because the filing of tax returns, immigration status, and provision of a social security number were and are irrelevant to coverage under the FLSA. This issue of immigration status is addressed more fully *infra*. Defendants are

I first address Defendants' contention that, because the two Plaintiffs are illegal aliens, they are not entitled to the protections afforded by the FLSA. Defendants' tortuous reading of *Hoffman Plastic Compounds, Inc. v. N.LR.B.*, 535 U.S. 137 (2002), is both plainly wrong and controverts clear, binding precedent.

To begin with, the Court cannot fathom how Defendants can argue with a straight face that "[i]t should not matter whether Plaintiffs are suing to recover money owed for past work or for future lost wages[.]" *Hoffman* held only "that [the Immigration Reform and Control Act,] IRCA bars the [NLRB] from awarding *backpay* to undocumented aliens." *Agri Processor Co., Inc. v. N.L.R.B.*, 514 F.3d 1 (D.C. Cir. 2008) (emphasis added).  The case did not foreclose other recovery or relief.  Quite contrary to Defendants' position, *Hoffman* did not hold that an illegal immigrant worker was not an employee under the NLRA, but instead the Court continually referred to the undocumented alien in that case as an "employee" and upheld other sanctions imposed by the NLRB against Hoffman.  *See Hoffman*, 535 U.S. at 149-52.  Further, as the District of Columbia Circuit recognized,

> nothing in IRCA's text alters the NLRA's definition of "employee." NLRA section 2(3), 29 U.S.C. § 152(3), continues to define "employee" exactly the same way it did when the *Sure-Tan* Court held that "undocumented aliens ... plainly come within the broad statutory definition of 'employee.'" 467 U.S. at 892, 104 S.Ct. 2803.

*Agri Processor Co., Inc.,* 514 F.3d at 4.

---

attempting to use these objections as evidence of perjury.  They have provided no other factual support for such a claim.  Moreover, they have provided no legal support, and the Court knows of none, for the argument that mere objections to discovery requests can be used as factual concessions.  Defendants' attempt to add Ivonne Galdames after both parties' motions for summary judgment were ripe, and without a valid factual or legal basis, must fail.  Plaintiffs' Motion to Strike Defendants' Supplement To Motion For Summary Judgment [DE 39] is **GRANTED** and Defendants' Supplement [DE 34] is **STRICKEN**.

Moreover, *Hoffman* did not implicitly or otherwise overrule *Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir. 1988). Several courts have held, post-*Hoffman*, that IRCA does not preclude awards under the FLSA for undocumented workers' past labor. *See Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219, 243 (2d Cir. 2006) ("Thus, a number of district courts have concluded, even after *Hoffman Plastic*, that IRCA does not preclude such FLSA awards.") (citing several cases from varying district courts, as well as noting that *Patel* came to the same conclusion prior to *Hoffman*). *Patel* held specifically "that undocumented workers are 'employees' within the meaning of the FLSA and that such workers can bring an action under the act for unpaid wages and liquidated damages." 846 F.2d at 706. The court stated that where an undocumented worker

> simply seeks to recover unpaid minimum wages and overtime for work already performed . . . the rationale the Supreme Court used in *Sure-Tan* to limit the availability of back pay under the NLRA to periods when the employee was lawfully present in the United States is inapplicable. It would make little sense to consider [plaintiff] "unavailable" for work during a period of time when he was actually working.

*Id.* at 705-06. The *Hoffman* Court, in analyzing a question of backpay, held only "that allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA." *Hoffman*, 535 U.S. 151. This holding does not, in any manner, overrule the *Patel* court's holding that an undocumented worked may bring claims for unpaid wages and liquidated damages. Therefore, Defendants' argument that Jacqueline Galdames and Guillermo Osorio are illegal aliens not entitled to the FLSA protections and remedies sought, necessarily fails.

The Court, however, must still address the parties' arguments regarding liability under the FLSA. The FLSA, 29 U.S.C. §201 *et seq.*, requires an employer to pay one-and-one-half times

the regular rate of pay to an employee for all time worked in excess of forty hours in a week, so long as that employee is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or the production of goods for commerce." 29 U.S.C. §207(a).

Individual coverage--where an employee is directly engaged in commerce or in the production of goods for commerce--under the FLSA is no longer at issue as the Plaintiffs have dropped that argument. The Court's main focus then, must be the question of enterprise liability, and whether N&D qualifies as an "[e]nterprise engaged in commerce or in the production of goods for commerce." The relevant definition is set forth in Section 203(s) of the FLSA:

> (1) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that--
>
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. §203(s). Defendants have stipulated to the $500,000 in gross annual volume of business requirement, but strenuously argue that N&D does not meet the commerce requirements. Specifically, N&D argues that it did not have two or more employees engaged in commerce or the production of goods [3] for commerce, and that any equipment and supplies used or handled in the course of employment were "at rest" and no longer in the stream of commerce. The issue can be reduced even further, to an examination of the equipment and supplies used,

---

[3] Although Defendants throughout their pleadings refer to the term "goods," they seemingly fail to acknowledge the importance of the term "materials." *See infra.*

handled or purchased by Plaintiffs and Defendant Manor (whom Plaintiffs allege is also an employee of the corporation).

At the outset, I agree with the cases that hold that ordinary purchases of gasoline for vehicles, use of credit cards or a line of credit, and use of the telephone for business purposes that does not amount to regular and recurrent use are insufficient, separately or together, to constitute engaging in commerce and to trigger enterprise coverage under the FLSA. *See Bien-Aime v. Nanak's Landscaping, Inc.*, No. 07-22645-CIV, 2008 WL 3892160, at *4 (S.D.Fla. Aug. 12, 2008); *Polycarpe v. E & S Landscaping Serv., Inc.*, No. 07-23223-CIV, 2008 WL 3866498 (S.D.Fla. Aug. 15, 2008). However, here N&D has also leased or purchased equipment and supplies that have come from out-of-state suppliers.

In his deposition, Mr. Manor explicitly stated that N&D had purchased a commercial washing machine, a thermal oil heater, a thermal ironer, a feeder, and a sheet folder from Indiana in 2007. *See Deposition of Ofer Manor*, DE 21, Exh. A. pg. 34, 43. The record is replete with evidence that the Plaintiffs, in the performance of their daily duties, used these machines. Further, Mr. Manor testified that he believed that the bleach and other chemicals the business uses, though obtained locally in Florida, were not produced in Florida. The documentary evidence submitted by Plaintiffs, *see, e.g.*, DE 25, Exh. F, more than adequately supports Plaintiffs' contention that these chemicals and supplies were manufactured out-of-state, and either shipped to a local distributor for delivery to N&D or shipped directly to N&D's business location. It is not entirely clear from Mr. Manor's deposition testimony whether he believed he purchased the chemicals from these distributors or from the manufacturer directly. However, the invoices from Pariser Industries, Inc., which for at least two relevant years provided chemicals and supplies to N&D, lists N&D (through its d/b/a) as the purchaser and provides Defendants'

place of business as the shipping address. There is no dispute that the manufacturer was located in New Jersey. *See* DE 25, Exh. F.[4]

Defendants have failed to refute the documentary evidence submitted by Plaintiff, that, taken in any light, shows that at least some materials and supplies were ordered from and shipped from out-of-state. Moreover, Plaintiffs have adduced more than sufficient evidence to show that they used or otherwise handled the machines, chemicals, and supplies in a regular and recurrent manner[5] as part of their daily job requirements and duties.

---

[4]Defendants' argument that Plaintiffs were required to present bills of lading instead of invoices is fallacious. They cite no case law that would require a plaintiff, at the summary judgment stage, to present a bill of lading as opposed to an invoice. It seems especially apparent that this is not required where here, not only does Plaintiffs' presentation of invoices which clearly show an out-of-state manufacturer and a shipping address of Defendants' business easily meet the burden to preclude summary judgment, but Defendants have produced no documentary evidence, such as bills of lading, to rebut the invoices.

[5]This "regular and recurrent" language comes from the regulations interpreting the FLSA. Specifically, 29 C.F.R. §779.238 states in part:

> Thus, it is not necessary that the enterprise have two or more employees engaged in the named activities every week. An enterprise described in section 3(s)(1) or (5) of the prior Act or in section 3(s)(1) of the Act as it was amended in 1966 will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, it regularly and recurrently has at least two or more employees engaged in such activities. On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238. The Eleventh Circuit has also relied on this language to find that enterprise coverage did not exist. *Scott v. K.W. Max Investments*, 256 F.App'x 244, 248-49, No. 07-10649, 2007 WL 2850926, at **3-4 (11th Cir. Oct. 2, 2007) (unpublished). However, that opinion is not binding, and even if it were, the factual differences are so great as to make the case nearly inapplicable. Furthermore, to the extent Defendants believe that the individual employees that

To be absolutely clear, I reject the application of *Scott v. K.W. Max Investments*, 256 F.App'x 244, 248, No. 07-10649, 2007 WL 2850926, (11th Cir. Oct. 2, 2007) (unpublished) to this Case, as well as *Lamonica v. Safe Hurricane Shutters, Inc.,* No. 07-61295-CIV-COHN (S.D.Fla. Sept. 23, 2008). Both of those cases rely specifically on an analysis of "goods" purchased or moved in interstate commerce. Neither recognize or analyze the significance of the addition of the words "or materials" to Section 203(s). *Thorne v. All Restoration Serv., Inc.*, is similarly inapplicable because it is explicitly an individual coverage case. 448 F.3d 1264 (11th Cir. 2006). Moreover, 29 U.S.C. §207(a)(1), the Section relied upon in *Thorne* for the requirements of individual coverage states: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, *or is employed in an enterprise engaged in commerce or in the production of goods for commerce*, for a workweek longer than forty hours . . . ." (emphasis added). The emphasized clause is important because, as noted above, 29 U.S.C. §203(s)(1)(A)(i) defines an "[e]nterprise engaged in commerce or in the production of goods for commerce" as an enterprise that "has employees engaged in commerce or in the production of goods for commerce, *or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person*[.]" (emphasis added). Therefore, while for individual coverage an employee may be required to "be directly participating in the actual movement of persons or things in interstate commerce," *see Thorne*, 448 F.3d at 1266, for enterprise coverage to exist the requirement is less strict, only necessitating

---

have brought suit must regularly and recurrently engage in the handling of goods of materials that have moved in interstate commerce, Defendants have misread the regulation. The regulation requires that the *enterprise* regularly and recurrently have two or more employees engaged in such activities, and does not require that it be the individuals bringing suit.

a showing that two or more employees handled or worked on goods *or materials* that *have been moved* in interstate commerce.  Cf. *Brock v. Hamad*, 867 F.2d 804, 807 (4th Cir. 1989) ("[Defendant's] argument . . . erroneously isolates Section 203(i) [defining "goods"] from the remainder of the FLSA.  When Section 203(i) is read in context with Section 203(s) . . . it seems that defendant's argument [that the enterprise was the ultimate consumer] must fail.").

It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA.  *See, e.g.*, *Dunlop v. Indust. America Corp.*, 516 F.2d 498, 500-02 (5th Cir. 1975)[6] (referring to the 1961 expansion, and noting "[t]his change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character."); *Archie v. Grand Cent. Partnership, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) ("The bill also adds the word 'or materials' after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry. . . . Since 1974, courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *Dole v. Bishop*,  740 F.Supp. 1221, 1225-26 (S.D.Miss.1990) ("[P]ursuant to a 1974 amendment, . . . in order for an enterprise to be engaged in commerce, it must have employees 'handling, selling, or otherwise working on goods or

---

[6]Decisions of the Fifth Circuit prior to the close of business on September 30, 1981 are binding precedent on the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

materials' that have moved in interstate commerce. This amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal citation and emphasis omitted); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 WL 793660, at *1 (M.D.Fla. Mar. 24, 2008) ("[E]nterprise coverage embraces virtually every business whose annual gross volume of sales or business is $500,000 or more . . . .") (footnote omitted).

Defendants' reliance on *Navarro v. Broney Auto. Repairs, Inc.*, 533 F.Supp.2d 1223 (S.D.Fla. 2008) is misplaced.  There, the plaintiff conceded that he could not prove enterprise coverage because the business did not meet the requisite gross income amount.  *Id.* at 1226.  The case then turned on a showing of individual coverage, which is inapposite here.  Even if the case dealt with enterprise coverage, the facts differ in an important manner.  Specifically, in *Navarro*, auto parts were sent by out-of-state shippers to local dealers, who would then keep the parts until they were purchased in the local market.  *Id.*  Here, however, the evidence reflects that the chemicals and supplies used by N&D were invoiced to the out-of-state suppliers, and were shipped by the out-of-state suppliers to N&D's business location.  That an intermediary local delivery company may have been used to make the final delivery does not change the analysis.

*Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, No. 07-22298-CIV, 2008 WL 1777392 (S.D.Fla. April 17, 2008) is also of no benefit to Defendants.  There, the defendants offered evidence that all of their business was intrastate, that they relied in no way on trade or commerce from outside of Florida, and that no products or supplies used in their business were purchased outside of Florida.  *Id.* at *6.  Plaintiffs attempted to rely on just the annual gross sales requirement, and offered absolutely no evidence to support the interstate commerce prong required for enterprise coverage.  *Id.* at *7.  This is, of course, distinguishable from the current

circumstances where Mr. Manor has admitted to purchasing products (the machines referenced above) from out-of-state (Indiana), and where Plaintiffs' have presented evidence that other materials they handled also came from out-of-state.

The Court therefore finds that Defendant N&D's business constitutes an "[e]nterprise engaged in commerce or in the production of goods for commerce" as defined in Section 203(s) of the FLSA.  Accordingly, because enterprise coverage exists, N&D is subject to the overtime and record keeping provisions of the FLSA as to each of the Plaintiffs, and any other similarly situated employees.

One issue remains to be addressed: whether Ofer Manor can be held individually liable as an employer.  Defendants maintain that Mr. Manor cannot be liable "because [his] liability is only derivative to that of the corporate Defendant's." *See* Defendants' Motion for Summary Judgment, DE 17.  Defendants' misunderstand the law.  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (citation omitted).  The argument that Mr. Manor cannot be held individually liable *because* N&D has been found to covered by the FLSA is a corruption of the case law.  Defendants' rely on the following holding in *Casseus v. First Eagle, L.L.C.*: "In this case, the Court finds that the corporate Defendant is not subject to suit, and since [the individual officer's] liability is only derivative to that of the corporate Defendant's, [the individual officer] is entitled to summary judgment on that ground." No. 07-23228-CIV, 2008 WL 1782363, at *5 (S.D.Fla., April 18, 2008).  This statement can only mean that when a business is found not to be covered under the FLSA, then an individual officer of that business also cannot be liable.  To read it any other way would contradict *Patel*, 803 F.2d

at 637-38, which makes plain that an individual officer with sufficient operational control may be held liable under the FLSA.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of the employer in relation to an employee[.]" 29 U.S.C. § 203(d).  The Eleventh Circuit has held that for liability to attach to an individual officer, that officer must "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (citation omitted).  Defendants' contention that Mr. Manor did not have day-to-day control of the company is belied by Mr. Manor's own deposition.  He testified that he owns half of the business, is the Vice-President of N&D, is the only one who purchases or orders supplies and equipment for the company, works seven days a week at N&D, controls the day-to-day administration of the business and to some extent the day-to-day operations with the managers, determines starting wages and adjusts pay rates, and, has the ultimate authority to hire and fire personnel.  These facts are more than enough to demonstrate that Mr. Manor had the requisite operational control of N&D's day-to-day functions, and is therefore liable under the FLSA to the same extent as N&D.

Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

(1) Defendants' Motion for Summary Judgment [DE 17] is **DENIED**.  Enterprise coverage exists for Defendant N&D Investment Corp. and, Defendant Ofer Manor is jointly and severally liable as an employer under the FLSA.

(2)  Plaintiff's Motion to Strike Defendants' Supplement To Motion For Summary Judgment [DE 39] is **GRANTED** and Defendants' Supplement [DE 34] is **STRICKEN**.

(3)  Plaintiff's Motion for Summary Judgment [DE 21] is **GRANTED**.

(4) This Case remains open, as a determination of the amount of unpaid overtime compensation, liquidated damages, and other relief owed to Plaintiffs has not been made.

**DONE and ORDERED** in chambers, Miami, Florida, this 24th day of September 2008.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*